STATE V. BALLMAN

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-345-CR

THE STATE OF TEXAS STATE

V.

WAYNE T. BALLMAN APPELLEE

------------

FROM COUNTY CRIMINAL COURT NO. 6 OF TARRANT COUNTY

------------

OPINION

------------

This is a State’s appeal from the trial court’s grant of appellee’s motion to suppress in this driving while intoxicated case.  We affirm.

Background Facts

The officer making the arrest for the DWI, Officer H.L. Gibbs, was the only witness at the suppression hearing.  Officer Gibbs testified that he stopped appellee Wayne T. Ballman when appellee made a right hand turn from a private parking lot onto Hulen Street without using his turn signal.  The State says this traffic code violation constituted probable cause to stop appellee and to issue a traffic citation.  
See
 
Tex. Transp. Code Ann.
 § 545.104 (Vernon 1999) (requiring operator to activate a turn signal to “indicate an intention to turn”).   At the suppression hearing the arresting officer admitted that the stop was a pretext stop primarily based upon a citizen call received by dispatch over an hour earlier claiming that appellee’s car was being erratically driven.  The citizen made three calls to police while following the vehicle.  She identified herself in two of the calls as “Karen“ and gave dispatch her cell phone number.  She also gave dispatch the vehicle type, color, and license plate number and told dispatch that the vehicle was turning into a Central Market parking lot.  She had followed the vehicle from Camp Bowie Boulevard until it turned into the lot. 

When Officer Gibbs located the car, it was parked.  It was empty when he stopped and looked inside.  He spoke with a private security officer at one of the stores and asked the officer to call him if he saw the car leaving.  About a half hour later the security officer called Officer Gibbs, who arrived at the parking lot, watched the car leaving the lot, and observed the vehicle make a right-hand turn, after stopping, without a signal.  The trial court found that the failure to signal was the only driving fact that Officer Gibbs observed and the only act that could have caused the officer to believe the driver was intoxicated.  Because the trial court also found there was no traffic code violation, it granted appellee’s motion to suppress.

Points on Appeal

In eight points, the State challenges the trial court’s order granting the suppression of the DWI evidence.  Although the State presented eight points on appeal, each point is based upon whether the arresting officer had reasonable suspicion or probable cause to stop appellee solely on the basis of appellee’s alleged traffic code violation. 

Standards of Review

The Fourth Amendment protects against unreasonable searches and seizures.  
U.S. Const
. amend. IV.  For an arrest to be justified under the Fourth 
 Amendment, it must be accompanied by probable cause to believe that a person has engaged in or is engaging in criminal activity.  
Henry v. United States
, 361 U.S. 98, 102, 80 S. Ct. 168, 171 (1959).  A detention, however, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts.  
Terry v. Ohio
, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); 
Carmouche v. State
, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). 

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche
, 10 S.W.3d at 327; 
Guzman v. State,
 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court's decision, we do not engage in our own factual review.  
Romero v. State,
 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State,
 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. 
 State v. Ross,
 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard, 
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
  Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. 
 Johnson v. State,
 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002);
 
Harrison v. State, 
144 S.W.3d 82, 85 (Tex. App.—Fort Worth 2004, pet. filed)
; Best,
 118 S.W.3d at 861-62.  However, when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact.  
Johnson,
 68 S.W.3d at 652-53.  

When the only evidence presented in a motion to suppress hearing 
is the testimony of the arresting officer (which, if believed, clearly adds up to a reasonable suspicion or probable cause) and the trial court grants the motion without filing findings of fact or any other explanation, there is not a “concrete” set of facts that can be implied from such a ruling. 
 Ross
, 32 S.W.3d at 856.  In those cases, there is a mixed question of law and fact that turns on an evaluation of the credibility and demeanor of the sole witness who the trial court obviously chose not to believe.  
Guzman
, 955 S.W.2d at 89.  We give almost total deference to the trial court’s ruling on such questions.  
Id.
; 
see also Ross
, 32 S.W.3d at 856.

When the sole witness at the motion to suppress hearing is the arresting officer and the trial court filed findings of fact and conclusions of law, however, the only question before us is whether the trial court properly applied the law to the facts it found.  
See Carmouche
, 10 S.W.3d at 327-28; 
Guzman
, 955 S.W.2d at 86-87, 89;
 
Harrison, 
144 S.W.3d at 85
; 
James v. State
, 102 S.W.3d 162, 169-79 (Tex. App.—Fort Worth 2003, pet. ref’d).
 
 This is especially true in a case like this where the State has not contested the trial court’s findings of fact and the trial court’s findings show that the court believed the arresting officer but concluded his testimony was insufficient as a matter of law.  
See Ross, 
32 S.W.3d at 856-58; 
Guzman, 
955 S.W.2d at 89; 
State v. Maldonado, 
No. 01-03-774-CR, 2004 WL 2306703, at * 2 (Tex. App.—Houston [
1st Dist.] Oct. 14, 2004, no pet. h.).

The State asserts, because of this, that we should apply a de novo
 
standard of review in this case.  The State says that there is a “concrete” set of facts because the record affirmatively indicates the trial court believed all of  Officer Gibbs’s testimony.  
See Ross
, 32 S.W.3d at 857-59.  We agree, but clarify that we are applying a de novo review only to the question of whether the trial court correctly applied the law to the facts it found as opposed to the correctness of any facts it found.  
See Swearingen v. State, 
143 S.W.3d 808, 811 (Tex. Crim. App. 2004) (explaining application of various standards of review to warrantless searches and searches pursuant to a warrant) (citing 
Ornelas v. United States, 
517 U.S. 690, 697-98, 116 S. Ct 1657, 1662 (1996));
 see also Johnson, 
68 S.W.3d at 652-53; 
Ballard, 
987 S.W.2d at 891; 
Harrison, 
144 S.W.3d at 85-86; 
Lemmons v. State, 
133 S.W.3d 751, 755 (Tex. App.—Fort Worth 2004, pet. ref’d).  Because 
the trial court entered both findings of fact and conclusions of law and because those findings make clear that the trial court accepted virtually all of Officer Gibbs’s testimony, we must give that court almost total deference in reviewing those historical facts but may review de novo the application of the law to those facts.
(footnote: 1)  
See
 
Ross
, 32 S.W.3d at 856-58.
 

Discussion

In the State’s first point, the State contends that the trial court erroneously determined that section 545.104 of the transportation code did not apply to the turn appellee made from the parking lot onto Hulen Street.  
See 
 
Tex. Transp. Code Ann.
 § 545.104.  In the State’s third point, it contends Officer Gibbs had probable cause to stop appellee because appellee committed a traffic violation by failing to signal when turning from the parking lot onto Hulen Street.  In its conclusions of law, the trial court determined that appellant committed no traffic violation because neither the transportation code nor the city’s municipal code requires a turn signal on a stop and turn from a private driveway onto a public street or highway.  
Id.
; 
Fort Worth, Tex., Code 
ch. 22, art. 3, § 22-78 (2004).
(footnote: 2)  The court also concluded that because the nonexistent traffic violation was the only basis for the stop, the stop was invalid; accordingly, the trial court granted the motion to suppress.

Traffic Code Violation

Under the Texas Transportation Code, an operator is required to use a turn signal to indicate an intention to turn, change lanes, or start from a parked position when a vehicle is being operated on a highway.  
Tex. Transp. Code Ann.
 §§ 542.001, 545.104.  A highway is defined as “the width between the boundary lines of a publicly maintained way any part of which is open to the public for vehicular traffic.”  
Id.
 § 541.302(5).  Thus, the trial court concluded that because the parking lot was not a highway but a privately maintained place, the signaling requirement did not apply to appellee’s turn.

Further, the court observed that while a traffic violation is not required for an officer to stop and detain a vehicle, an officer must otherwise have a reasonable suspicion supported by articulable facts that criminal activity may be afoot.  The court concluded that the officer did not have reasonable suspicion to stop the vehicle because the officer had no identifying information on the driver of the vehicle at the time the citizen saw the vehicle as opposed to when the officer saw it leaving, the vehicle had remained parked and unoccupied for nearly an hour in the parking lot, and over an hour had passed since the concerned citizen had called to report the erratic driving of the vehicle.  Our review of the record and the trial court’s findings and conclusions leads us to likewise conclude that the trial court properly applied the law to the facts and correctly granted appellee’s motion to suppress.

An officer must have probable cause to stop a vehicle and arrest the driver for a traffic violation without a warrant.  
Ballard
, 987 S.W.2d at 892.  Probable cause exists when the facts and circumstances within the officer’s knowledge at that time, and of which he has reasonably trustworthy information, would cause a reasonably prudent person to believe that a certain person has committed or is committing a crime.  
Id.
  When an officer observes a traffic offense, he may arrest the violator.  
Lemmons
, 133 S.W.3d at 756.  Here, however, the officer did not observe a traffic offense; he only thought he had. The trial court properly determined the officer did not observe a traffic violation under section 545.104 of the transportation code and therefore had no probable cause to stop or arrest appellee.  We overrule the State’s first and third points.

Additionally, the State’s fourth point claims trial court error that conflicts with article 14.01 of the code of criminal procedure.  
Tex. Code Crim. Proc. Ann.
 art. 14.01 (Vernon 1977).  Article 14.01 gives officers the right to arrest without a warrant in limited situations in which the officer sees an offense committed in his presence or within his view.  
Id
.  However, as we have already concluded that appellee committed no offense in Officer Gibbs’s view, article 14.01 is inapplicable as well.  We overrule the State’s fourth point.

In the State’s second point, it contends that the trial court erred by concluding the officer lacked reasonable suspicion to stop appellee on the basis of the traffic violation.  At trial, however, the State relied solely on two theories to justify the stop:  (1) that the officer had probable cause to stop and arrest appellee due to a traffic violation and (2) that the officer had reasonable suspicion to stop and investigate appellee due to the concerned citizen call on a possible DWI.  At no time during the hearing on the motion to suppress did the State claim that the officer had 
reasonable suspicion
 to stop and investigate appellee due to an alleged traffic code violation.  And on appeal, the State has abandoned any claim of reasonable suspicion based upon the private citizen’s call.

In cases in which the State is the appealing party, points not raised or argued by the State at trial are waived and cannot be raised for the first time on appeal.  
State v. Mercado, 
972 S.W.2d 75, 78 (Tex. Crim. App. 1998).  According to the court of criminal appeals, this limitation arises out of a similar rule of appellate jurisprudence applicable to the defense: points not raised and argued at trial are deemed to be waived.  
Id.; see also 
Tex. R. App. P.
 33.1(a).  This is so despite many cases affirming a trial court’s decision 
denying suppression 
based upon unraised claims in which the defendant is the appellant and the State is seeking to uphold a lower court’s determination in its favor.  
Mercado
, 972 S.W.2d at 78
.  As the court of criminal appeals stated in 
Mercado
:  

Although this Court has approved of appellate courts considering alternative theories of law applicable to the facts of the case which 
support
 the trial court’s decision, we have not afforded the courts of appeals latitude to reverse a trial court’s decision on new theories of law not previously presented to that court for its consideration.

Id.
 at 77.  Thus, the State may not claim for the first time on appeal that Officer Gibbs had reasonable suspicion to stop and detain appellee based upon the alleged traffic code violation.  Therefore, we overrule the State’s second point.

In the State’s fifth, sixth, seventh, and eighth points, it asserts trial court error based upon 
Terry v. Ohio
, the Fourth Amendment to the United States Constitution, and article I, section 9 of the Texas Constitution.  
U.S. Const
. amend. IV; 
Tex. Const
. art. I, § 9; 
Terry v. Ohio
, 392 U.S. at 1, 88 S. Ct. at 1868.
 
 In support of these points, the State summarily claims that we should look generally to the central requirement of the reasonableness of Officer Gibbs’s search and that since the record shows the officer conducted himself reasonably, we should sustain its fifth, sixth, seventh, and eighth points.  

However, these points were not separately presented or ruled upon in the trial court, so they are waived to the extent they are not otherwise encompassed in the State’s other points.  
See Mercado
, 972 S.W.2d at 78.  Also, to the extent that these arguments are addressed in the State’s discussions of its other points, we do not address them separately here because they are more specifically addressed in our discussion of the State’s other points and because there is little additional analysis or argument under these points that was not already discussed elsewhere.  
See
 
Tex. R. App. P.
 38.1; 
Wood v. State
, 18 S.W.3d 642, 649 n.6 (Tex. Crim. App. 2000); 
Harris v. State
, 133 S.W.3d 760, 764 n.3 (Tex. App.—Texarkana 2004, pet. ref’d); 
Martinez v. State
, 969 S.W.2d 497, 499 (Tex. App.—Austin 1998, no pet.).  We overrule points five, six, seven, and eight. 

Conclusion

Having overruled the State’s eight points, we affirm the judgment of the trial court.

TERRIE LIVINGSTON

JUSTICE

PANEL F: LIVINGSTON, WALKER, and MCCOY, JJ.

PUBLISH

DELIVERED:  December 16, 2004

APPENDIX “A
”

FINDINGS OF FACT

1. On July 17, 2002, a concerned citizen called the Fort Worth Police Department to report a maroon Toyota Camry “driving erratically” as it proceeded eastbound on Interstate 30, passing Camp Bowie, and exiting at Hulen Street.

2. According to the Fort Worth Police Department’s dispatch records, three calls were made by the concerned citizen at 7:41 p.m., and 7:43 p.m., and 7:45 p.m.

3. The caller identified the Camry by license plate numbers ZTT48B/BTT48B.

4. The caller further identified herself as Karen and gave her cellular phone number to dispatch.

5. The caller did not give a description of the driver of the vehicle; however, she reported seeing the driver with a drink in the car.

6. The caller indicated the vehicle was turning into a shopping center on Hulen Street known as [t]he Central Market Shopping Center.

7. At 8:30 p.m., approximately 45 minutes after dispatch received the calls, Corporal Gibbs of the Fort Worth Police Department received the broadcast via his Mobile Data Terminal (MDT) regarding the maroon Toyota Camry.

8. Fort Worth officers H. Gibbs and W. Browning proceeded to the Central Market parking lot where they located a maroon Toyota Camry matching the description given by the concerned citizen.

9. The maroon Camry was parked and unoccupied.

10. The concerned citizen was not present in the Central Market parking lot.

11. Officer Gibbs drove past the vehicle, but did not remember getting out of his vehicle to look inside the Camry.

12. Officer Browning made contact with off duty officer J. Williams, who was working security at the location.  Officer Williams was asked to contact Officer Browning when the vehicle in question was again occupied.

13. At approximately 8:50 p.m., over an hour after the calls were originally made by the concerned citizen, Officer Williams advised Officers Browning and Gibbs that the Camry was being occupied in the Central Market parking lot.

14. Officers Gibbs and Browning were near the location and immediately made the scene.

15. Officers observed the vehicle stopped in the Central Market parking lot at the intersection of the shopping center and Hulen Street, which is controlled by traffic lights facilitating vehicles coming into and exiting from the shopping center.

16. The officers witnessed the vehicle make a right-hand turn out of the parking lot onto the public street without using a turn signal.

17. Corporal Gibbs stopped the vehicle.

18. Corporal Gibbs first identified Wayne T. Ballman as the driver of the vehicle after he made the stop.

19. Other than failure to signal, Officer Gibbs did not observe any driving facts which would cause him to believe the driver of the vehicle was intoxicated.

20. But for the broadcast from the concerned citizen, Officer Gibbs would not have been alerted to the defendant’s vehicle.

CONCLUSIONS OF LAW

1. Section 541.301 of the Texas Transportation Code defines a highway or street as:  “the width between the boundary lines of a publicly maintained way, any part of which is open to the public for vehicular traffic.”

2. The parking lot where the Defendant was observed not using his turn signal is not a publicly maintained way.

3. Section 541.302(9) of the Texas Transportation Code states:  “a private road or driveway, means a privately owned way or place used for vehicular traffic and used only by the owner and persons who have the owner’s express or implied permission.”

4. The parking lot in which Defendant’s car was observed by Corporal Gibbs is privately maintained and is not a public way.

5. Section 541.303 of the Texas Transportation Code defines an intersection as:

(a) . . . the common area at the junction of two highways, other than the junction of an alley and a highway.

(b) The dimensions of an intersection include only the common area.

(1) “Within the connection of the lateral curb line or, in the absence of curb lines, the lateral boundary lines of the roadway of intersecting highways that join at approximately right angles.”

6. The privately maintained way where Defendant’s car was observed by Corporal Gibbs is not an intersection as defined by Section 545.103 Texas Transportation Code.

7. Section 542.001 of the Texas Transportation Code (Vehicles on highways) states:  “a provision of this subtitle relating to the operation of a vehicle applies only to the operation of a vehicle on a highway unless the provision specifically applies to a different place.[“]

8. Section 545.104 of the Texas Transportation Code; Signaling turns; use of turn signals does not contain a provision that makes this provision applicable to privately maintained ways.

9. Section 542.005 of the Texas Transportation Code only allows owners of private property to regulate traffic on their property; it does not give peace officers the authority to enforce traffic laws on private property.

10. The City of Fort Worth Municipal Code, Section 22-78, applies only to vehicles turning or entering a private road or driveway, and does not apply to this case.

11. There is no requirement that a traffic regulation has been or is about to be violated in order for an officer to have reasonable suspicion sufficient to justify a stop of a vehicle. 

12. A police officer may stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of probable cause. 

13. Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged in or is, or soon will be, engaging in illegal conduct. 

14. Reasonable suspicion is determined by considering the “totality of the circumstances.” 

15. An officer may be justified in stopping a driver based upon a reasonable suspicion of driving while intoxicated. 

16. Because over an hour had passed between the time of the broadcast and the stop of the vehicle, the police lost nexus between the broadcast and the stop.

17. Because over an hour had passed between the time of the broadcast and the stop of the vehicle, Officer Gibbs did not possess sufficient facts that, based solely upon the broadcast, warranted him to reasonably suspect the Defendant was engaged in the illegal activity of driving while intoxicated.

18. Because over an hour had passed between the time of the broadcast and the stop of the vehicle, Officer Gibbs did not possess sufficient facts that, based solely upon the broadcast, warranted him to reasonably suspect that someone in the vehicle was engaged in the illegal activity of public intoxication.

19. Because over an hour had passed between the time of the broadcast and the stop of the vehicle, Officer Gibbs did not possess sufficient facts that, based solely upon the broadcast, warranted him to reasonably suspect that someone in the vehicle possessed an open container of alcohol.

[Citations omitted].

FOOTNOTES
1:
The trial court’s findings of fact and conclusions of law are attached to this opinion as appendix “A.”

2:
The State does not contend on appeal that appellee’s turn onto Hulen Street constituted a violation of the Fort Worth Code.